My name is David Shannon. I'm an assistant federal public defender from Tucson. I represent the appellant defendant, Lannadine Brownfeather. Our argument in this case is that Ms. Brownfeather suffered some improper judicial participation in the plea bargaining process or in the plea colloquy process. The government's raised a number of arguments in response. One of those is a jurisdictional argument. One is an argument regarding the application of plain error under some recent Supreme Court cases. The third is the substance of the case. The facts of the case are very simple. I can tell them in a couple of sentences. They're not even that, unfortunately, that unusual. A stabbing on the White Mountain Apache Reservation. The defendant, drunk, doesn't know whether she did it or not, pled guilty anyway, but in a rather unusual plea colloquy. Turning first to the government's argument that this Court has no jurisdiction, I really believe that argument is foreclosed under Portillo-Cano. I believe that the issue here is whether the plea itself was valid, because what we're talking about is a Rule 11 violation. This is a Rule 11 case, not a later withdrawal of the plea after acceptance case. There's been some jurisprudence that, in those later cases, the waiver does apply as to whether the defendant can withdraw after the plea has been accepted, but here we're not talking about a denial of the right to withdraw. We're talking about a Rule 11 violation. And I really don't want to spend too much time on that issue because I believe it is foreclosed. The more interesting legal argument, I think, at least to me, is the argument regarding the plain-error standard and how it would apply in this case. Vaughan came forth and said that we don't do automatic reversals for Rule 11 cases, Rule 11 violations. But I think, unless I'm mistaken, I think that's always been the jurisprudence of this Court, that we have always used plain-error analysis. So I don't think Vaughan really changes anything about the way this Court has handled such cases. The second case is Dominguez-Benitez. And that case dealt more specifically with how you show plain-error in a Rule 11 case. But the thing I want to emphasize is that in Dominguez-Benitez, as in Vaughan, they were talking about a failure to give a warning. And so Dominguez-Benitez focused properly in that case on whether the defendant would have entered the plea had the warning been given and then looked at the factual situation to make that determination. I don't think that's what the Court should do in this case. And I looked at the Court's prior jurisprudence, which deals with how do you look for plain error in a – in what is specifically this kind of case, which is a case where there's been improper judicial participation in the plea process. This Court has – I can't remember when it started, but as far back as Bruce and always done its own plain-error analysis and has identified other harms other than just coercion. What specifically do you contend the magistrate did wrong? Moving to that issue, Your Honor, there were a number of things, and I laid them all out in my brief, as ways in which the magistrate participated in the plea colloquy. But the one that I believe is the most significant is the one that came at the end. When Ms. Brownfeather said, can I still – do I still have time to change my mind, the magistrate told her correctly that she did under this Court's cases. At that point, the plea has not been accepted. In Arizona, the plea is accepted later by the district judge. But then the magistrate went on to say, but if you're thinking about doing that, I would urge you to talk to your father. And then he talked to the father, who was in the courtroom, and said, and, Father, you should talk to her and counsel her about admitting what she did. And then he went on to express how that would be better for her if she admitted what she did. Don't you think the context in which that is, is that if she continues to plead guilty, tell her, be forthright, you know, when she gets up to sentencing? I don't believe that was the context, Your Honor. And I think if this Court will turn to or would at some point look in the excerpt at pages 63 through 65, it's pretty clear what the magistrate is talking about. So the --"she asks whether she has time to change her mind," and then, and I'm looking on page 64 at line 14, the Court says, okay, so if you're thinking about that, and I think it's very clear from the lines before that he's talking about changing your mind. If you're thinking about changing your mind, you ought to talk to your dad at length about this. Okay? So at that point, it's clear the magistrate is talking about whether to change your mind or not. And then he turns to the father and says, you know, you need to counsel her to admit what she did. Now, I admit it's not a model of clarity. If it's capable, susceptible of two different interpretations, one being that the magistrate was, as Judge Canby suggested in his question, simply advising her on the or, B, the interpretation you put on it, what's our role as a court of appeals? If it's susceptible of either a good or a bad, if you will, interpretation, what do we do? We weren't there, of course. I believe that you take a de novo look at it, and you make the determination. I don't think that you're bound to use a standard that says, well, if it can go one of two ways, we have to go the way of saying that it's against the defendant, even if we feel like it is not. I think this is strictly de novo at this point. And the reason I say that is that under this Court's cases, when you're determining whether Rule 11 error occurred, you take a de novo standard because it's a matter of law. It is later in the process when you're looking at the harm. But does de novo review mean that we assume the worst? No, it does not. It means you decide which you think is the more reasonable construction. I mean, I readily admit that if this Court looks at this language and says, well, we think the best construction is that he was warning her about what about how to comport herself in front of the district judge if the plea was withdrawn, then I'm stuck with that. But if this Court thinks the better construction is, no, he was warning her about withdrawing, then I think I'm entitled to that. And I think that is the best construction because of the context in which this was said. There would be no reason at this point for the magistrate to say, well, assuming you withdraw your plea, let me talk to you and let me have your father talk to you about how you should then comport yourself. No. Assuming you leave your plea in place, let me tell you how to talk to the district judge.  And then he says, in that, which might mean a change of subject, I would really talk to you and counsel your daughter about admitting what she did rather than trying to minimize it, because I don't know how Judge Campbell treats these things. But if I were to get a defendant and I were to get a defendant and I were to get a  defendant who would, before me, indicate, well, they're not really guilty, and she hasn't said that, okay, but if she's minimizing what she did, Judge Campbell may say, fine, then let's go to trial, and then you're not going to get those three levels. He's clearly saying, if you're in front of Judge Campbell with a plea of guilty and you get up there and say, well, gee, I really didn't do it, he might say, well, I'm going to have to undo you. I can't accept your plea. He could be saying that, or he could be warning her about the consequences of being found guilty at trial and, therefore, saying, you know, you may not want to run the risk of being found guilty at trial after denial. And I think that's a better interpretation. I have only a few seconds left. I'd like to reserve those if I could. Roberts. Thank you for your argument. Thank you. We'll hear from the government at this time. Ms. Boone. Good morning. May it please the Court. Linda Boone on behalf of the United States. The facts in this case obviously are very important. Prior to the challenged comments by the magistrate judge in this case, Defendant Brownfeather had presented a written plea agreement to the Court, had signed and read the plea agreement, and had indicated no less than eight times that she intended to plead guilty and accept the terms of the plea agreement. Prior to her pleading guilty, she told the magistrate judge in no uncertain terms that she had read the plea agreement, she understood its terms, she had no questions, and she agreed to everything that was in the plea agreement. Further, she told the magistrate judge that the plea agreement was consistent with the settlement conference, that she was entering the plea because she realized that she could receive a lower sentence than if she was to proceed to trial and lose, and that she was pleading guilty because she was guilty. There was no coercion on the part of the magistrate judge to get her to enter that guilty plea. Furthermore, the defendant's will was not overborne by the magistrate judge. And a very good example in the record of that is the fact that the settlement conference by this magistrate judge, who was requested by name by the defendant, was conducted in January of 05. But at that point, there was no agreement. There was no settlement. And it was not until three months later, in March of 05, that Defendant Brownfeather entered her plea. So, therefore, she had a three-month period after the settlement conference in which we may assume she considered whether or not she should enter her plea, and she did enter the plea, and told the magistrate judge, when she was again before this same magistrate judge, that she was not entering that plea because of anything he had said. It was not words of the magistrate judge that made her decide to enter her plea. Did she say anything prior to the exchange we discussed with Mr. Shannon that indicate that she might be thinking about withdrawing her plea? The only thing she said, Your Honor, was, so, I still have time to change my mind if I want to. Is that what you were saying to the magistrate judge? That is the only indication in the record, Your Honor, that she was even considering it. Now, Article III judges have a lot of power, but they are not omniscient. If the defendant was thinking about changing her mind, she had many opportunities to do so and gave no indication to the Court. And the court was not able to change her mind. Roberts. Judge Anderson is a very fine judge. Yes, Your Honor. But he is not an Article III judge. No, he's not, Your Honor. That's what I'm clarifying. The sentencing judge is the Article III judge. She gave no indication to the Article III judge. When she appeared before Judge Campbell. When she appeared before Judge Campbell, Your Honor. But yet she had many opportunities to do so. She filed no objections to the findings and recommendation of the magistrate. She filed no objections or neither a motion to withdraw her guilty plea between the time she entered it and the five months later when she was sentenced. Would you agree that the statement about consulting with her father would be better left unsaid? Your Honor, I believe it would have been better left unsaid, but I believe that this magistrate knew, because of the settlement conference and his prior contact with Ms. Brownfeather's parents, that she respected her parents' opinion and looked to them because she had specifically requested their presence during the settlement conference. The magistrate was not trying to talk the defendant into maintaining her guilty plea. He was saying, as he had said several times during the colloquy, if you're going to plead guilty, then tell the truth, show remorse if you have it, so that you can get all of the benefits that you have negotiated for and father and consult with your father in making this decision. The magistrate did not try to encourage her either way, to plead guilty or to withdraw. In fact, he told her several times, tell the truth. I don't want you to plead guilty if, in fact, you are not guilty. But if you are going to plead guilty, then don't try to minimize what you have done. Roberts, I think we understand your argument. Thank you very much for coming in today. What's the purpose of the settlement conference itself? Your Honor, when a defendant wishes to negotiate, the settlement conference in our district is used essentially to try to save time for the district court to see if, in fact, the two sides can reach an agreement. And that is exactly what is done here. A proposed plea agreement is presented. They go over all of the terms with the magistrate, judge, and counsel. And if all parties can, they reach an agreement and they proceed. That didn't result in a plea at that conference. It did not, Your Honor, in this case. But in fact the settlement conference could easily be interpreted as participation in plea negotiations. Well, Your Honor, except that, it is clearly made known to the defendant that the magistrate judge is not the judge who makes the sentencing decision. And so, therefore, our considerations for coercion are differentiated. The Court has no further questions. Thank you. Thank you. Thank you, Your Honor. You have a few seconds for rebuttal. Yes, Your Honor, three things. First, one, Judge Canby, in response to your settlement conference question, I believe there was a case out of this Court a few years ago regarding settlement conferences in San Diego that approved a similar program to what they have in Arizona. Second, there was a question regarding were there any other indications that she might want to withdraw the plea. I listed some of those in my brief. The primary one is that she didn't know whether she did it and that she told the Court forthrightly, you know, I'm only doing this out of fear. And finally, the government's argument regarding that she never attempted to withdraw afterwards is sort of a catch-22. If she had attempted to withdraw after this talk, then we would have said, well, he didn't coerce her. And now they're saying she didn't attempt to withdraw after his remarks, so that means she wasn't coerced. This is not, I think, a tenable argument. Thank you. Okay. Thank both counsel for their arguments. The case just argued will be submitted for decision.
judges: Canby, Thompson, Hawkins